**IN THE U.S. DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION**

| | | |
|---|---|---|
| **LIBERTY SURPLUS INSURANCE CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **NO.** |
| | ) | |
| **V** | ) | |
| | ) | |
| **HILCO TRADING,LLC, HILCO FINANCIAL, LLC N/K/A 1300 FINANCIAL, LLC, HILCO, INC., HILCO APPRAISAL SERVICES, LLC, HILCO ENTERPRISE VALUATION SERVICES, LLC, MARK A. SMILEY, ARNOLD H. DRATT, JEFFREY LINSTROM, BENJAMIN J. NORTMAN and RICHARD L. KAYE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Now comes Plaintiff, Liberty Surplus Insurance Corporation, by and through its attorneys, Walker Wilcox Matousek LLP, and for its Complaint for a Declaratory Judgment against Hilco Trading, LLC, Hilco Financial, LLC k/n/a 1300 Financial, LLC, Hilco, Inc., Hilco Appraisal Services, LLC, Hilco Enterprise Valuation Services, LLC, Mark A. Swift, Arnold H. Dratt, Jeffrey Linstrom, Benjamin J. Nortman and Richard L. Kaye, respectfully states as follows:

## I. Nature of This Action

1. This insurance coverage action seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. Liberty Surplus Insurance Corporation ("LSIC" or "Plaintiff") seeks a declaration of the parties' rights and obligations under two professional liability insurance policies issued by LSIC to Hilco Trading, LLC – Policy No. EO5N549167002, with a Policy Period of April 23, 2008 to April 23, 2009 (the "2008-09 Policy")[1] and Policy No.

[1] Ex. 1

EO5N549167003, with a Policy Period of May 23, 2009 – May 23, 2010 (the "2009-10 Policy")[2](the 2008-09 Policy and the 2009-10 Policy are collectively the "Policies") with respect to two lawsuits filed in the Circuit Court of Cook County, Illinois: *The Patriot Group v. Hilco Financial, LLC, et al.*, Case No. 10-L-03914 (the "*Patriot* Complaint")[3], and *Unicredit Bank AG, New York Branch v. Hilco Trading, LLC,* et al. case No. 10-CH-21663 (the "*HVB* Complaint").[4] The *Patriot* Complaint and the *HVB* Complaint (collectively the "Underlying Complaints") contain numerous allegations directed against the named insured, Hilco Trading, LLC, as well as a number of additional insureds as set forth more fully below.

2. Upon information and belief, at all times relevant Hilco Trading, LLC was a holding company that owned and operated some 20 companies which it referred to as "the Hilco Organization" on its website. The Hilco Organization claimed to offer its clients a "fully integrated package of services" relating to business valuation, financing and asset sales.

3. According to the *HVB* Complaint, Hilco Trading, LLC formed co-defendant Hilco Financial, LLC "to allow [Hilco] Trading to enter the asset-based lending market…." The two cases currently pending in the Circuit Court of Cook County (the "Underlying Litigation") arise from the financial collapse of Hilco Financial, LLC. As a result of the foregoing collapse, Hilco Financial defaulted under its primary and subordinated credit facilities with the plaintiffs in the Underlying Litigation. The plaintiffs in these actions – Unicredit Bank AG, New York Branch f/k/a Bayerische Hypo-Und Vereinsbank, New York Branch ("HVB") and The Patriot Group, LLC ("Patriot") – seek to recoup monies leant to Hilco Financial prior to its failure. HVB, Hilco

[2] Ex. 2.

[3] Ex. 3.

[4] Ex. 4.

Financial's primary lender, seeks just over $10 million. Patriot, a lender with a subordinate position to HVB, seeks $31.3 million.

4. Hilco tendered its defense of the Underlying Litigation to LSIC. Actual controversies exist as to whether LSIC has a duty to defend and/or a duty to indemnify the defendants against the claims contained in the Underlying Complaints. Consequently, LSIC seeks a declaration that:

a. LSIC has no duty under the 2009-10 Policy to defend or indemnify any of the defendants to the Underlying Litigation because the Underlying Litigation does not constitute a claim first made and reported during the Policy Period of the 2009-10 Policy.

b. LSIC has no duty to defend or indemnify Hilco Trading, LLC, Hilco Financial, Hilco, Inc., Mark A. Smiley, Arnold H. Dratt, Jeffrey Linstrom, Benjamin J. Nortman and Richard L. Kaye (Smiley, Dratt, Linstrom, Nortman and Kaye are collectively the "Individual Defendants") against the Underlying Litigations because the allegations against these defendant do not allege claims arising out of **Wrongful Acts** made in the course of rendering **Professional Services** as required under the Policies. Accordingly, there is no possibility of coverage for the claims alleged against the foregoing defendants.

c. LSIC has no duty to defend or indemnify Hilco Appraisal Services, LLC. and Hilco Enterprise Valuation Services, LLC because the allegations against these defendants do not allege Claims arising out of Wrongful Acts made in the course of rendering or failing to render Professional Services to a third-party as required under the Policies. Accordingly, there is no possibility of coverage for the claims alleged against the foregoing defendants.

d. LSIC has no duty to defend or indemnify Hilco, Inc., because Hilco, Inc. is not an insured under the Policy. Accordingly, there is no possibility of coverage under the Policies for Hilco, Inc.

## II. Parties

5. Plaintiff LSIC is a corporation organized under the laws of the State of New Hampshire with its principal place of business in Massachusetts. At all times relevant hereto LSIC was authorized to engage in the business of insurance in Illinois.

6. Upon information and belief, defendant Hilco Trading, LLC ("HT") was at all times relevant a limited liability company organized under the laws of Delaware and, for purposes of diversity jurisdiction, a citizen of the States of Illinois and New York.[5]

7. Upon information and belief, defendant Hilco, Inc. ("HI") was at all times relevant a corporation organized under the laws of the State of Delaware with its principal place of business in Northbrook, Illinois. Upon information and belief, HI is the parent of the named insured, HT.

8. Upon information and belief, defendant Hilco Appraisal Services, LLC ("HAS") was at all times relevant a limited liability company organized under the laws of the State of Delaware and, for purposes of diversity of citizenship, a citizen of the state of Illinois.[6] At all times relevant to this action, HAS was a subsidiary of HT.

9. Upon information and belief, defendant Hilco Enterprise Valuation Services, LLC ("HEV"), was at all times relevant to this action a limited liability company organized under the laws of the State of Delaware and, for purposes of diversity of citizenship, a citizen of the State of Illinois. Upon information and belief, HAS is the sole member of HEV. As set forth at paragraph 9 hereinabove, HAS is a citizen of the state of Illinois.

---

[5] The Illinois Secretary of State's records indicate the Members of HT are: (1) GFSF Investments I Corp.; (2) Penco Trading Co., Inc; (3) Hilco Holdings, LLC; and (4) Cerberus Hilco Investments LLC. Upon Information and belief, GSFS Investments I Corp. is a corporation incorporated under Delaware law with its principal place of business in New York. Upon information and belief, Penco Trading Co., Inc. is a corporation incorporated under Illinois law with its principal place of business in Illinois. Hilco Holdings, LLC is a limited liability company organized under the laws of Delaware. The members of Hilco Holdings, LLC are: (1) HT; (2) Mark Smiley; and (3) Eric Kaup. Upon information and belief, HT is for purposes of diversity of citizenship a citizen of the states of Illinois and New York. Upon information and belief Mssrs. Smiley and Kaup are each, for purposes of diversity of citizenship, citizens of the State of Illinois. Upon information and belief Gerberus Hilco Investments LLC is an LLC organized under Delaware law. Upon information and belief, Cerberus Hilco Investments LLC is a Delaware LLC with its principal place of business in New York. Information concerning the members of Cerberus Hilco Investments LLC is not publically available. LSIC respectfully requests that it be permitted to conduct some discovery on this issue before the Court dismisses this case for lack of subject matter jurisdiction.

[6] The members of HAS are: (1) Barry D. Gunderson; (2) Mark A. Smiley; (3) Jeffrey B. Hecktman; (4) Jeffrey W. Linstrom; and (5) Stanley Gilman. Upon information and belief, each of the members of HAS are residents and citizens of the State of Illinois.

10. Upon information and belief, defendant Mark A. Smiley ("Smiley") was at all times relevant a resident and citizen of the State of Illinois. Smiley was the Chief Financial Officer and a member of the Executive Committee of HT.

11. Upon information and belief, defendant Arnold H. Dratt ("Dratt") was at all times relevant a resident and citizen of the State of Illinois. Dratt was the Executive Vice President and a member of the Executive Committee of HT. Dratt was also the CEO of HAS at all times relevant hereto.

12. Upon information and belief, defendant Jeffrey Linstrom ("Linstrom") was at all times relevant a resident and citizen of the State of Illinois. Linstrom was the Senior Executive Vice President, General Counsel and a member of the Executive Committee of HT.

13. Upon information and belief, defendant Benjamin J. Nortman ("Nortman") was at all times relevant a resident and citizen of the State of Illinois. Nortman was the Executive Vice President of HT.

14. Upon information and belief, defendant Richard L. Kaye ("Kaye") was at all times relevant a resident and citizen of the State of Illinois. Kaye was the Chief Financial Officer and a member of the Executive Committee of HT.

## II. Jurisdiction and Venue

15. This Court has Subject Matter Jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matters in controversy exceed the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity of citizenship as between the Plaintiff and the Defendants.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because HT, HF, HI, HAS and HEV all have their principal location of business within this Judicial District and

each of the Individual Defendants reside in this Judicial District. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) because "a substantial part of the events or omissions giving rise to the claim occurred…." within this Judicial District. Finally, venue is also proper in this Court pursuant to 28 U.S.C. § 1391(a)(3) because each of the defendants are subject to personal jurisdiction in this Judicial District.

## III. Background

### A. <u>HT's Organization and the Underlying Loan Transactions</u>

17. HT is an Illinois-based company that controls approximately 20 companies that it claims offered a fully integrated package of services relating to business valuation, financing and asset sales. For all times relevant to this complaint, HT is the majority owner of HAS. For all times relevant to this complaint, HT – through its majority ownership of HAS – is also the majority owner of HEV. For all times relevant to this complaint, HT was also the majority owner of HF. HT was the "Managing Member" of HF and was vested with exclusive authority to manage and control HF.

18. In November 2005, HF was capitalized with a $30 million senior secured credit facility provided jointly by LaSalle Bank National Association ("LaSalle") and Wells Fargo Bank ("Wells Fargo") and a $20 million junior secured facility provided by The Patriot Group, LLC ("Patriot"). The proceeds of the loans were to be used by HF to enter into asset-based loans to third party borrowers. Pursuant to terms of both credit facilities, HF's lenders could exercise veto power over any loan issued by HF.

19. In September 2007, the senior secured facility between HF, LaSalle and Wells Fargo matured under its own terms and LaSalle and Wells Fargo elected not to renew the facility. Their role as primary lender was taken by Unicredit Bank AG, N.Y. Branch f/k/a

Bayerische Hypo-Und Vereinsbank ("HVB"), which provided HF with a senior security facility in an amount not to exceed $75 million. Upon information and belief, HVB ultimately lent HF in excess of $27 million under its facility. Simultaneously, Patriot increased its junior facility from $20 million to $30 million. Upon information and belief, Patriot extended loans to HF for the full $30 million amount of its facility.

20. Each of the loans issued by HF to third-parties was based upon appraisals issued by one Hilco entity, HAS or HEV to another Hilco entity, HF. Among the issues in the Underlying Litigation are three such appraisals. The appraisals at issue in the underlying litigation were issued while LaSalle and Wells Fargo were HF's primary lenders.

21. Upon information and belief, all three of the appraisals at issue in the underlying litigation were shared with both Patriot and HVB.

**B. <u>HF Defaults On Its Credit Facilities</u>**

22. By February 2008, HF had become a distressed company with questionable ability to pay off its debts to HVB and Patriot. The Patriot Complaint alleges that "[o]n or about March 10, 2008 (one month prior to the inception of the policy at issue in this action), Patriot sent a letter to Hilco Financial, which listed, among other things, various representations, warranties and obligations under the Amended Subordinated Credit Agreement that had been breached by Hilco Financial."

23. In mid-2008, HF ceased making interest payments to its lenders. The credit facilities expired by their own terms in September 2008 and HF was unable to make the payments due at maturity. By the end of 2008, HF surrendered to HVB possession of its collateral, including all of HF's right, title and interest in each loan agreement that HF had entered into with its borrowers. HVB commenced liquidation of the collateral.

24. On April 22, 2009, HVB's attorney wrote to HAS and HEV alleging unspecified errors and omissions in the preparation of appraisals provided to HF, and demanding payment of the roughly $17.8 million still owed by HF (the "HVB Demand Letter").[7] Notice of the HVB Demand Letter was given to LSIC during the 2008-09 Policy Period. LSIC promptly reserved its rights under the 2008-09 Policy, however, a defense of the HVB Demand Letter was not necessary as HAS and HEV elected to not respond to it.

**C. <u>The LSIC Policies</u>**

25. The 2008-09 Policy issued by LSIC has a Policy Period of April 23, 2008 to April 23, 2009. The 2009-10 Policy issued by LSIC has a Policy Period of May 23, 2008 to May 23, 2009. Each of the Policies is subject to a Limit of Liability of $10,000,000 for each claim and for the policy period aggregate. The 2008-09 Policy has a $250,000 Deductible; the 2009-10 Policy has a $350,000 Deductible. The Policies provide coverage on a "claims made and reported" basis.

26. The Insuring Agreements of the Policies provide:

> **I. INSURING AGREEMENTS**
>
> **(A)** The Company will pay on behalf of the **Insured** all sums in excess of the Deductible amount stated in the Declarations which the **Insured** shall become legally obligated to pay as **Damages** and **Claims Expenses** resulting from **Claims** first made against the **Insured** during the **Policy Period**, or **Extended Reporting Period**, if applicable, as a result of a **Wrongful Act** by the **Insured** or any **Entity** for whom the **Insured** is legally liable, provided that:
>
> **(1)** such **Wrongful Act** was committed on or after the **Retroactive Date** and before the end of the **Policy Period**; and

[7] The HVB Demand Letter is Ex. 5.

**(2)** prior to the **Knowledge Date** stated in the Declarations of this Policy, the **Insured** did not know or could not have reasonably expected that such **Wrongful Act** might give rise to a **Claim**.

As a condition precedent to coverage, the **Insured** shall report all **Claims** in writing to the Company as soon as practicable, but in no event later than sixty (60) days after expiration or termination of this Policy, or during the **Extended Reporting Period**, if applicable.

* * *

27. The Policies each contain the following relevant definitions:

**V. DEFINITIONS**

**(A)** "**Claim**" means receipt of a civil action, suit, proceeding or demand naming the **Insured** seeking **Damages** and/or **Professional Services** arising out of a **Wrongful Act** by the **Insured** or any **Entity** for whom the **Insured** is **legally** liable. A **Claim** will be deemed first made on the earliest date any **Insured** receives the civil action, suit, proceeding or demand.

* * *

**(H)** "**Insured**" means only the following:

**(1)** The Named Insured designated in Item 1. of the Declarations, or by endorsement to this Policy;

**(2)** Any person who is, was, or hereafter becomes a partner, principal, officer, director, member, or employee of the Named Insured, but only while acting on behalf of the Named Insured;

**(3)** Independent Contractors who are natural persons, or any temporary or leased personnel or retired personnel, but only while acting under the direct supervision and on behalf of the Named Insured;

**(4)** The estate, heirs, executors, administrators, and legal representatives of an **Insured** in the event of such **Insured's** death, disability, incapacity, insolvency, or bankruptcy but only to the extent such **Insured** would have otherwise been provided coverage under this Policy;

**(5)** Any **Subsidiary**;

**(6)** The lawful spouse of any **Insured** solely by reason of:

**(a)** Spousal status, or;

**(b)** A spouse's ownership interest in property or assets that are sought as recovery.

This definition (H)(6) shall not apply to the extent a **Claim** alleges any **Wrongful Act** or omission by such spouse.

* * *

**(O)** "**Professional Services**" means those services specified in Item 7. of the Declarations which are provided by the **Insured** to a third party for a monetary fee; or as otherwise defined by endorsement to this Policy.

* * *

**(Q)** "**Subsidiary**" means any **Entity** in which the **Named Insured** owns either directly or indirectly 50% or more of the outstanding voting stock. An **Entity** ceases to be a **Subsidiary** on the date, during the **Policy Period**, that the Named Insured's ownership, either directly or indirectly, ceases to be 50% of the outstanding voting stock.

* * *

**(R)** "**Wrongful Act**"[8] means any actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duty, or **Personal Injury**, in the rendering of or failure to render **Professional Services**.

28. Item 7 of the Declarations for the 2008-09 Policy describe the insured "Professional Services" as set out below:

> Consumer liquidations, including store closings, department closings, and disposal of excess, out-of-season or damaged goods; Value opinions in support of asset-based lending, due diligence, estate planning, tax and strategic planning; Management Consulting; Real estate appraisals, brokerage, and consulting and property management; Auctions of industrial machinery and equipment.

29. The Policies each contains the following relevant exclusions:

---

[8] The Policies include Endorsement No. 3 **PERSONAL INJURY EXTENSION ENDORSEMENT.** Endorsement No. 3 deletes the original Definition V.R **Wrongful Act** and replaces that definition with the provision set forth hereinabove.

**VI. EXCLUSIONS**

This Policy does not apply to and the Company shall not be liable for **Damages** and/or **Claims Expenses** resulting from any **Claim** made against an **Insured**:

**(A)** for, based upon, or arising from any actual dishonest, criminal, malicious or fraudulent act or omission by an **Insured**; however, this Exclusion shall not apply to **Claims Expenses** or the Company's duty to defend any such **Claim** unless or until a judgment or a final adjudication adverse to such **Insured** establishes the **Insured** committed such dishonest, fraudulent, criminal or malicious act or omission;

**(B)** by or on behalf of or with the assistance of any:

**(1)** **Insured** or

**(2)** **Entity** which at the time of the **Wrongful Act** or the time of the **Claim** or during the pendency of the **Claim**:

**(a)** is or was to any extent owned by or controlled by any **Insured**;

**(b)** to any extend owned or controlled any **Insured**;

**(c)** is or was affiliated with any **Insured** through any common ownership or control; or

**(d)** is or was acting with any **Insured** as a director, officer, partner, or principal stockholder;

* * *

**D. <u>The Underlying Litigation</u>**

**1. <u>The *Patriot* Complaint</u>**

30. On March 31, 2010 Patriot filed suit in the Circuit Court of Cook County, Law Division, Case No. 10-L-3914. Please refer to Ex. 3. The *Patriot* Complaint names HT, HF, HAS and HI as defendants. The *Patriot* Complaint seeks to recover "not less than $31,300,000 in past due indebtedness and unpaid interest and expenses from its borrower, Hilco Financial, and from Hilco Trading, Hilco Financial's parent…." The *Patriot* Complaint also "seeks to

recover $3,700,690 that was improperly distributed by Hilco Financial to Hilco Trading, affiliate Hilco, Inc., and other LLC members of Hilco Financial."

31. The *Patriot* Complaint contains 11 counts. The complaint alleges:

| | | |
|---|---|---|
| I | Breach of Contract | against HF |
| II | Breach of Implied Covenant of Good Faith and Fair Dealing | against HF |
| III | Fraud | against HF |
| IV | Fraud | against HAS |
| V | Veil Piercing | against HT |
| VI | Agency | against HT |
| VII | Direct Participation Liability | against HT |
| VIII | Fraudulent Transfer | against HT |
| IX | Constructive Fraudulent Transfer | against HT |
| X | Constructive Fraudulent Transfer | against HI |
| XI | Costs and Attorneys' Fees pursuant to contract | against HT and HF |

32. Counts I-III of the *Patriot* Complaint are directed toward HF. Count I alleges that HF breached the Amended Subordinated Credit Agreement. Count II alleges that HF Breached the Implied Duty of Good Faith and Fair Dealing by, "among other things, refusing in bad faith to honor to honor its obligations under the Amended Subordinated Credit Agreement." Count III alleges that HF committed fraud in that HF knowingly "made false statement of material fact, in the form of financial statements and collateral reports that misrepresented the quality of HF's loan portfolio and the overall financial health of" HF. The allegations of Counts I-III do implicate "Professional Services" as defined in the Policies and, accordingly, do not fall within the scope of the coverage afforded by the Policies for "Professional Services."

33. Count IV is directed toward HAS. Count IV alleges that HAS committed fraud when it knowingly "made false statements of material fact in the form of inflated appraisals that misrepresented the value of Hilco Financial's loan portfolio." The allegations of Count IV do not implicate "Professional Services" as the services were not provided by the "Insured to a third party for a monetary fee …." because HF – the entity that allegedly paid for HAS's services – is

not a "third party." Both HAS and HF are included in the Policies' definition of "Insured" and therefore all of these Hilco entities are first parties, and not third parties, to the Policies.

34. Counts V-IX of the *Patriot* Complaint allege causes of action directed toward HT, HF's parent. Count V alleges that HF's corporate form should be disregarded and HT be held liable for HF's conduct because HT "assumed and continuously exercised complete dominion and control over [HF]." In this regard, Court V further alleges that [HT] stripped [HF] down to a mere shell, allowed its assets to dissipate precipitously in value and siphoned off $3,700,690…." through distributions. Count VI alleges that HT "authorized and directed the specific actions" of HF and, as such, is liable for the acts of HF under the agency doctrine of *respondeat superior*. Count VII alleges that HT directly participated in HF's fraudulent misrepresentations and the breach of the Amended Subordinated Credit Agreement and is directly liable for Fraud and breach of contract. Counts VIII and IX allege that HT fraudulently transferred and/or constructively fraudulently transferred HF's assets when it caused HF to make distributions to HT, HI and certain of the Individual Defendants. The conduct alleged in Counts V-IX do not implicate "Professional Services" rendered by HT as defined in the Policy and, accordingly, the allegations of Counts V-IX fall outside the scope of the coverage afforded by the Policies.

35. Count X of the *Patriot* Complaint is directed toward HI. Count X alleges that HI participated in a constructively fraudulent transfer when it received distributions in the amount of $642,873 for which HF "did not receive reasonably equivalent value for the Distribution" at a time HF "was insolvent and/or undercapitalized…." HI is not an "Insured" under the Policies and therefore there is no coverage for Count X. Moreover, the conduct alleged in Count X does

not implicate "Professional Services" as defined in the Policy and, accordingly, the allegations of Counts X fall outside the scope of the coverage afforded by the Policies.

36. Count XI of the *Patriot* Complaint is directed to both HT and HF. Count XI seeks to recover all reasonable out-if-pocket costs and expenses (including attorney costs and any taxes) incurred by [Patriot] after an "Event of Default" pursuant to Section 15.2 of the Amended Subordinated Credit Agreement. The allegations of Count XI are unrelated to "Professional Services" as defined in the Policy and, accordingly, the allegations of Counts XI fall outside the scope of the coverage afforded by the Policies.

### 2. The *HVB* Complaint

37. On May 20, 2010 HVB filed a complaint in the Circuit Court of Cook County, Chancery Division, Case No. 10-CH-21663. Please refer to Ex. 4. The *HVB* Complaint avers that "[i]n September 2007, HVB entered into a loan agreement to lend Money to" HF. Within six months of that agreement, "HVB learned that [HF] was in default of its loan agreement with HVB." The *HVB* Complaint further alleges that HT either caused or permitted serious irregularities in HF operations. According to the *HVB* Complaint, as a result of HF's default, HVB incurred "a loss of not less than $10,004,149.94.

38. The *HVB* Complaint contains 14 Counts:

| | | |
|---|---|---|
| I | Breach of Contract | against HF |
| II | Negligent Misrepresentation | against HAS and HEV |
| III | Fraud | against HT and HF |
| IV | Direct Participation Liability | against HT |
| V | Veil Piercing | against HT |
| VI | Fraud | against HT |
| VII | Negligent Misrepresentation | against HT |
| VIII | Money Had and Received | against HT and Individual Defendants |
| IX | Limitation on distribution under Del. Law | against HT, HI and Individual Defendants |
| X | Fraudulent Conveyance in Fact | against HT |
| XI | Fraudulent Conveyance in Law | against HT |
| XII | Fraudulent Conveyance in Law | against HT, HI and Individual Defendants |
| XIII | Breach of Fiduciary Duty | against HT and HT Executive Committee Members Smiley, Dratt and Linstrom |

XIV Foreclosure on HF's choses in action against HF

39. Count I of the *HVB* Complaint is directed toward HF. Count I alleges that HF breached the Credit Agreement between HF and HVB when it failed to make payments required under the Agreement when the Agreement matured on September 25, 2008. The allegations of Count I are unrelated to "Professional Services" as defined in the Policy and, accordingly, the allegations of Counts I fall outside the scope of the coverage afforded by the Policies.

40. Count II of the *HVB* Complaint is directed toward HAS and HEV. Count II alleges that HAS and HEV made negligent misrepresentations when they "provided appraisals and other appraisal information [of the collateral securing HF's loans] that were inflated and otherwise inaccurate." Count II further alleges that HVB "reasonably relied upon the representations of [HAS] and [HEV and] HVB has been damaged in the sum of not less than $10,004,149.94. The allegations of Count II do not implicate "Professional Services" as the services were not provided by the "Insured to a third party for a monetary fee…." because HF – the entity that allegedly paid for HAS's and/or HEV's services – is not a "third party." HAS, HEV and HF are all included in the Policies' definition of "**Insured**" and therefore all of the Hilco entities are first parties, and not third parties, to the Policies.

41. Count III of the *HVB* Complaint is directed toward HT and HF. Count III alleges that HF and HT acted fraudulently when they knowingly included non-conforming loans in their calculation of borrowing base, under the Credit Agreement, at the time HF submitted the Initial Borrowing Request as well as four subsequent Borrowing Requests. The conduct alleged in Count III does not implicate "Professional Services" as defined in the Policies and, accordingly, the allegations of Counts III fall outside the scope of the coverage afforded by the Policies.

42. The allegations of Counts IV-VII of the *HVB* Complaint are directed toward HT. Count VI alleges HT directly participated in the fraudulent conduct described more fully in

Count III and, accordingly, HT is liable for such conduct. Count V alleges that HF's corporate form should be disregarded and HT be held liable for HF's conduct because HT exercised complete dominion and control over HF such that HF was a mere instrumentality of HT. Count V further alleges that "it would promote an injustice or a fraud upon HVB to recognize the fiction of a separate corporate form" for HF and HT. Counts VI and VII plead alternatively allegations of fraud and/or negligent misrepresentations arising out of certain representations made by representatives of HT during the September 2007 negotiation of the Credit Agreement. The conduct alleged in Counts IV-VII do not implicate "Professional Services" rendered by HT as that term is defined in the Policies and, accordingly, the allegations of Counts IV-VII fall outside the scope of the coverage afforded by the Policies.

43. The allegations of Counts VIII and IX of the *HVB* Complaint are directed toward HT, HI and the Individual Defendants. Counts VIII and IX allege that HT caused HF to make certain distributions to HT, HI and the Individual Defendants, representing each recipient's estimated tax liability arising out of HF's projected taxable income in 2007. Counts VIII and IX further allege that the recipients of the forgoing distributions were not entitled to said distributions because HF actually suffered losses during 2007 and, as a result, had no taxable income. In Count VIII, HVB seeks to recover those distributions pursuant to HVB's rights under the Credit Agreement and the Peaceful Possession Letter. Count IX seeks to recover the same distributions under § 18.607(a-b) of the Delaware Limited Liability Company Act, HVB's rights under the credit agreement, the Uniform Commercial Code and the Peaceful Possession Letter. The conduct alleged in Counts VIII and IX do not implicate "Professional Services" as defined in the Policies and, accordingly, the allegations of Counts VIII and IX fall outside the scope of the coverage afforded by the Policies.

44. Counts X, XI and XII of the *HVB* Complaint are directed toward HT (X, XI and XII), HI and the Individual Defendants (XII). Counts X-XII seek to recover the same distributions sought to be recovered in Counts VIII and IX pursuant to the Illinois Uniform Fraudulent Transfer Act or other applicable law. The conduct alleged in Counts X-XII does not relate to "Professional Services" as defined in the Policies and, accordingly, the allegations of Counts X-XII fall outside the scope of the coverage afforded by the Policies.

45. Count XIII of the *HVB* Complaint is directed toward HT, Smiley, Dratt and Linstrom (the last three are alleged HT "Executive Committee Members"). Count XIII alleges that the HT and the Executive Committee Members breached their fiduciary duties to HF by, among other things: (1) knowingly failing to exercise independent judgment with respect to review and approval of loans HF entered into with borrowers and, instead, they merely "rubber stamped" such loans; (2) knowingly and recklessly failing to abide HF's own Credit review Procedures; (3) knowingly and/or with reckless indifference failed to monitor or oversee HF's loan portfolio, purposely and/or recklessly allowing HF's employees to administer HF's loans without oversight. The conduct alleged in Count XIII does not implicate "Professional Services" as defined in the Policies and, accordingly, the allegations of Count VIII fall outside the scope of the coverage afforded by the Policies.

46. Count XIV of the *HVB* Complaint seeks to transfer control of any causes of action that HF may have against the other defendants. Any cause of action belonging to HF would not implicate "Professional Services" as defined in the Policies as the services were not provided by the "Insured to a third party for a monetary fee …." because HF – the entity that allegedly paid for HAS's and/or HEV's services – is not a "third party." Both HAS, HEV and HF are included in the Policies' definition of "**Insured**" and therefore all of these Hilco entities are first parties,

and not third parties, to the Policies. In addition, such causes of action are barred by Exclusion IV.B. of the Policies.

### E. The Coverage Dispute

47. Upon information and belief, HT, HF, HI, HAS, HEV and the Individual Defendants (collective the "Hilco Defendants") contend that LSIC has a duty to defend the Hilco Defendants against the *Patriot* Complaint and the *HVB* Complaint and has a duty to indemnify the Hilco Defendants from any judgment or settlement arising from those lawsuits.

48. LSIC believes that it has no obligation to defend or indemnify the HilcoDefendants against the *Patriot* Complaint or the *HVB* Complaint (the "Underlying Litigation"). Accordingly, a justiciable controversy exists between LSIC and the Hilco Defendants with respect to LSIC's coverage obligations regarding the Underlying Litigation.

49. LSIC has no adequate remedy at law and, therefore, is entitled to a declaratory judgment as set forth below.

## V. Causes of Action

### Count I
**(Against HT, HF, HI and the Individual Defendants)**
**(Duty to Defend – No Professional Services)**

50. LSIC restates and realleges the allegations of paragraphs 1-49 as if fully set forth herein.

51. The Policies are Professional Liability Policies pursuant to which LSIC agreed only to pay "all sums in excess of the deductible amount … which the Insured becomes legally obligated to pay as Damages and Claims Expenses resulting from Claims…." The Policies unambiguously define "Claims" to mean:

> **(A)** "**Claim**" means receipt of a civil action, suit, proceeding or demand naming the **Insured** seeking **Damages** and/or **Professional Services** arising out of a **Wrongful Act** by the **Insured**....

Thus, for there to be coverage under the Policies, a Claim must arise out of a Wrongful Act.

52. The Policies unambiguously defines a "**Wrongful Act**" to mean: "any actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duty, or **Personal Injury**, in the rendering of or failure to render **Professional Services**." "Professional Services" means those services specified in Item 7. of the Declarations which are provided by the **Insured** to a third party for a monetary fee…." Item 7. of the Declarations provides that Professional Services includes:

> Consumer liquidations, including store closings, department closings, and disposal of excess, out-of-season or damaged goods; Value opinions in support of asset-based lending, due diligence, estate planning, tax and strategic planning; Management Consulting; Real estate appraisals, brokerage, and consulting and property management; Auctions of industrial machinery and equipment.

Accordingly, the Policies over cover Claims arising out of Wrongful Acts made in the course of rendering or failing to render Professional Services to a third-party.

53. Count I (Breach of Contract), Count II (Breach of Implied Warranty of Good faith), Count III (Fraud) and Count XI (fees and costs) of the *Patriot* Complaint purport to allege causes of action against HF. Count I (Breach of Contract), Count III (Fraud) and Count XIV (Foreclosure) of the *HVB* Complaint purports to assert causes of action against HF. However, none of the allegations in either complaint asserts **Claims** arising out of **Wrongful Acts** made in the course of rendering or failing to render **Professional Services** under the Policies. Accordingly, there is no possibility of coverage under the Policies for any claims alleged against HF.

54. Count V (Veil Piercing), Count VI (Agency), Count VII (Direct Participation), Count VIII (Fraudulent Transfer), Count IX (Constructive Fraudulent Transfer) and Count XI (Fees and Costs) of the *Patriot* Complaint purport to allege causes of action against HT. Count III (Fraud), Count IV (Direct Participation), Count V (Veil Piercing), Count VI (Fraud), Count VII (Negligent Misrepresentation), Count VIII (Money had And Received), Count IX (Distribution Under Delaware Law), Count X (Fraudulent Conveyance in Fact), Count XI (Fraudulent Conveyance in Law), Count XII (Fraudulent Conveyance in Law) and Count XIII (Breach of Fiduciary Duty) of the *HVB* Complaint purport to allege causes of action against HT. However, none of the allegations in either complaint asserts Claims arising out of Wrongful Acts made in the course of rendering or failing to render Professional Services under the Policies. Accordingly, there is no possibility of coverage under the Policies for any claims alleged against HT.

55. Count X of the *Patriot* Complaint purports to allege a cause of action for Constructive Fraudulent Transfer against HI. Count XIII (Money Had and Received), Count IX (Distribution Under Delaware Law) and Count XII (Fraudulent Conveyance In Law) of the *HVB* Complaint purport to state causes of action against HI. However, none of the allegations in either complaint asserts **Claims** arising out of **Wrongful Acts** made in the course of rendering or failing to render **Professional Services** under the Policies. Accordingly, there is no possibility of coverage under the Policies for any claims alleged against HI.

56. Count VIII (Money Had and Received), Count IX (Distribution Under Delaware Law) and Count XII (Fraudulent Conveyance in Law) of the *HVB* Complaint purport to allege causes of action against the Individual Defendants. Count XIII of the *HVB* Complaint purports to state a cause of action for Breach of Fiduciary Duty against Smiley, Dratt and Linstrom.

However, none of the foregoing allegations in *HVB* Complaint asserts **Claims** arising out of **Wrongful Acts** made in the course of rendering or failing to render **Professional Services** under the Policy. Accordingly, there is no possibility of coverage under the Policies for any claims alleged against the Individual Defendants.

57. There is no possibility of coverage for any of the causes of action alleged in the *Patriot* Complaint or the *HVB* Complaint against HF, HT, HI or the Individual Defendants including the Executive Committee Members. As there is no possibility of coverage for any of these claims, LSIC has no duty to defend HF, HT, HI or the Individual Defendants.

**WHEREFORE**, the Court should enter a judgment declaring that LSIC has no duty to defend and no duty to indemnify HF, HT, HI or the Individual Defendants against the *Patriot* Lawsuit and the *HVB* Lawsuit.

**Count II**
**(Against HAS and HEV)**
**(Duty to Defend – No Third-Party)**

58. LSIC restates and realleges the allegations of paragraphs 1-49 as if fully set forth herein.

59. The Policies are Professional Liability Policies pursuant to which LSIC only agreed to pay "all sums in excess of the deductible amount … which the Insured becomes legally obligated to pay as Damages and Claims Expenses resulting from Claims…." The Policies unambiguously define "**Claim**" to mean:

> **(A)** "**Claim**" means receipt of a civil action, suit, proceeding or demand naming the **Insured** seeking **Damages** and/or **Professional Services** arising out of a **Wrongful Act** by the **Insured**....

Thus, for there to be coverage under the Policy, a Claim must arise out of a Wrongful Act.

60. The Policy unambiguously defines a "**Wrongful Act**" to mean: "any actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duty, or **Personal Injury**, in the rendering of or failure to render **Professional Services**." Section V. O. of the Policy unambiguously defines **Professional Services** as services provided to a third-party:

> **(O)** "**Professional Services**" means those services specified in Item 7. of the Declarations which are provided by the **Insured** to a third party for a monetary fee; or as otherwise defined by endorsement to this Policy.

Accordingly, under the Policies there is only coverage for Claims arising out of **Wrongful Acts** made in the course of rendering or failing to render **Professional Services** to a third-party.

61. Count IV of the *Patriot* Complaint is directed toward HAS. Count IV alleges that HAS committed fraud when it knowingly "made false statements of material fact in the form of inflated appraisals that misrepresented the value of Hilco Financial's loan portfolio."

62. Count II of the *HVB* Complaint is directed toward HAS and HEV. Count II alleges that HAS and HEV made negligent misrepresentations when they "provided appraisal and other appraisal information [of the collateral securing HF's loans] that were inflated and otherwise inaccurate." Count II further alleges that HVB "reasonably relied upon the representations of [HAS] and [HEV and] HVB has been damaged in the sum of not less than $10,004,149.94.

63. Each of the loans issued by HF was based upon appraisals issued by either HAS or HEV to HF. At issue in the underlying *HVB* and *Patriot* actions are three such appraisals. Each such appraisal contains a "restricted use" clause providing:

> [Y]ou [HF] agree not to reference our [HAS] name or our report, in whole or in part in any document distributed to third parties, where it is reasonable to assume that these third parties will rely on such information for purposes other than

> contemplated by the scope of our analysis as defined in this [engagement] letter and appraisals, without our written consent.

The appraisals prepared by HAS and HEV were prepared at HF's direction and for HF's and/or other Hilco entities internal use and consumption.

64. As stated above, under the Policies there is only coverage for Claims arising out of **Wrongful Acts** made in the course of rendering or failing to render **Professional Services** to a third-party. Here, the **Professional Services** rendered by HAS and HEV, in preparing the appraisals at issue in the underlying litigation, were rendered to HF. HF is a sister corporation of HAS and HEV and all fall within the Policies' definition of "**Insured**". Accordingly, the **Professional Services** at issue here were not rendered to a "third party," i.e., a party other than the parties to the LSIC Policies. LSIC respectfully submits that **Professional Services** rendered by one Insured to another are not "services … provided by the Insured to a third party …." In addition, at this time, it is not clear whether HF ever paid for the Professional Services provided HAS and HEV. The Policy was never intended to apply to internally-issued appraisals.

65. There is no possibility of coverage for the allegations against HAS in Count IV of the *Patriot* Complaint or the allegations against HAS and HEV in Count II of the *HVB* Complaint, because those Counts do not allege Claims arising out of Wrongful Acts made in the course of rendering or failing to render Professional Services to a third-party. As there is no possibility of coverage for the claims alleged against HAS and HEV under the Policy, LSIC has no duty to defend HAS or HEV against the *Patriot* Complaint or the *HVB* Complaint.

**WHEREFORE**, the Court should enter a judgment declaring that LSIC has no duty to defend and no duty to indemnify HAS and HEV against the *Patriot* Lawsuit and the *HVB* Lawsuit.

**Count III**
**(Against HI)**
**(Duty to Defend – Not An Insured)**

66. LSIC restates and realleges the allegations of paragraphs 1-49 as if fully set forth herein.

67. The Policies were issued to defendant Hilco Trading, LLC. as the Named Insured. In addition, the Policies identifies several classes of individuals and entities who are **Insureds** under the Policy. Section V.(H) of the Policies defined who is an insured as follows:

> **(H)** "**Insured**" means only the following:
>
> **(1)** The Named Insured designated in Item 1. of the Declarations, or by endorsement to this Policy;
>
> **(2)** Any person who is, was, or hereafter becomes a partner, principal, officer, director, member, or employee of the Named Insured, but only while acting on behalf of the Named Insured;
>
> **(3)** Independent Contractors who are natural persons, or any temporary or leased personnel or retired personnel, but only while acting under the direct supervision and on behalf of the Named Insured;
>
> **(4)** The estate, heirs, executors, administrators, and legal representatives of an **Insured** in the event of such **Insured's** death, disability, incapacity, insolvency, or bankruptcy but only to the extent such **Insured** would have otherwise been provided coverage under this Policy;
>
> **(5)** Any **Subsidiary**;
>
> **(6)** The lawful spouse of any **Insured** solely by reason of:
>
> **(a)** Spousal status, or;
>
> **(b)** A spouse's ownership interest in property or assets that are sought as recovery.

> This definition (H)(6) shall not apply to the extent a **Claim** alleges any **Wrongful Act** or omission by such spouse.

68. Section V.(Q) defines **Subsidiary** as follows:

> **(Q)** "**Subsidiary**" means any **Entity** in which the **Named Insured** owns either directly or indirectly 50% or more of the outstanding voting stock. An **Entity** ceases to be a **Subsidiary** on the date, during the **Policy Period**, that the Named Insured's ownership, either directly or indirectly, ceases to be 50% of the outstanding voting stock.

69. Upon information and belief, HI is the parent corporation of the Named Insured HT. The Named Insured, HT, does not "own[] either directly or indirectly 50% or more of the outstanding voting stock" of HI. Accordingly, HI is not entitled to coverage under the Policies as a **Subsidiary** of the Named Insured.

70. Further, HI does not fall within any of the other classes of individuals or entities identified as an **Insured** by Section V.(H)(1-6). Accordingly, HI is not an **Insured** under the Policies.

71. Because HI is not an **Insured** under the Policies, there is no possibility of insurance coverage under the Policies for any of the allegations of the *Patriot* Complaint or the *HVB* Complaint. As there is no possibility f coverage under the Policies, LSIC has no duty to defend HI against the allegations of the *Patriot* Complaint or the *HVB* Complaint.

**WHEREFORE**, the Court should enter Judgment declaring that LSIC has not duty to defend HI against the allegations of the *Patriot* Complaint or the *HVB* Complaint.

## VI. Conclusion

For the reasons set forth hereinabove, Liberty Surplus Insurance Corporation respectfully requests that the Court enter a judgment declaring that Liberty Surplus Insurance Corporation

has no duty to defend Hilco Trading, LLC., Hilco Financial, LLC. n/k/a 1300 Financial, LLC., Hilco, Inc., Hilco Appraisal Services, LLC., Hilco Valuation Services, LLC, Mark A. Smiley, Arnold H. Dratt, Jeffrey Linstrom, Benjamin J. Nortman and Richard L. Kaye against the allegations of the *Patriot* Complaint or the *HVB* Complaint under either Policy No. EO5N549167002, with a Policy Period of April 23, 2008 to April 23, 2009 or Policy No. EO5N549167002, with a Policy Period of May 23, 2009 – May 23, 2010.

LIBERTY SURPLUS INSURANCE CORPORATION

By: /s/ James W. Kienzle______
One of its attorneys

WALKER WILCOX MATOUSEK LLP
Neil H. Holmen
James W. Kienzle
One North Franklin Street
Suite 3200
Chicago, Illinois 60606
312-244-6700
(fax) 312-244-6800